UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| APRIL PARMLEY and ARMANDO FORTOUL, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-2806-B |
| HOME DEPOT U.S.A., INC., | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Home Depot U.S.A., Inc. ("Home Depot")'s Motion for

Summary Judgment (Doc. 21). For the following reasons, the Court **GRANTS** the Motion and

**DISMISSES** Plaintiffs' claims with prejudice.

I.

BACKGROUND

This is a mold case. Plaintiffs April Parmley and Armando Fortoul (collectively

"Plaintiffs") purchased sheetrock from Home Depot. *See generally* Doc. 1-1, Original Pet., ¶ 8.

This sheetrock was later ruined when mold started to grow on it. *Id.* Plaintiffs claim that Home

Depot is responsible for the mold on the sheetrock and thus filed this lawsuit. *Id.*

In 2019, Plaintiffs started building a home on land they owned in Richland, Texas. Doc.

23, Def.'s App'x, 11–12. One of the materials they needed for construction was sheetrock. *See id.*

at 21. Accordingly, on March 31, 2021, Plaintiffs purchased 170 sheets of sheetrock from Home

Depot. *Id.* at 25.

Home Depot delivered the sheetrock to Plaintiffs at their Richland home on April 3, 2021. *Id.* at 21–22, 100, 440. The sheetrock appeared dry at the time of delivery. *Id.* at 26–27, 114. Once delivery was completed, Plaintiffs immediately moved the sheetrock—by hand— inside the construction site (i.e, the home), which was fully enclosed. *Id.* at 27–28. Parmley testified that sheetrock did not feel moist when she and Fortoul moved it indoors. *Id.* at 27–31. Although Plaintiffs had installed an HVAC system in the home, it was not in use at this time. *Id.* at 32–33.

Plaintiffs' contractor installed the sheetrock in Plaintiffs' home over a five-day period, from April 7–12, 2021. *Id.* at 34, 180. During the installation, Plaintiffs' contractor applied joint compound[1] to the sheetrock as a part of "the tape and bedding process." Doc. 25, Lewis Decl., 4; Doc. 23, Def.'s App'x, 61, 111–12, 336. Plaintiffs' contractor did not express any concerns regarding the quality of the sheetrock or otherwise inform Plaintiffs that the sheetrock was moist. Doc. 23, Def.'s App'x, 36–37. After the sheetrock was installed, construction continued without incident. *Id.* at 41–48. Although Plaintiffs did not live in the home during this period, they were there "quite a bit" and would monitor the progress of construction "every few days." *Id.* at 127–28.

Then, on May 25, 2021, Parmley discovered mold on the sheetrock while she was testing paint samples in the home. *Id.* at 41, 180. Plaintiffs had not observed mold in the home prior to this date. *Id.* at 48. After the discovery of the mold, Plaintiffs hired Brett Lewis, the owner of Texas Mold Solutions, to conduct a mold assessment. *Id.* at 156, 160; Doc. 25, Lewis Decl., 3. Lewis visited the home and conducted his mold assessment on June 3, 2021. Doc. 25, Lewis

---

[1] "Joint compound . . . is used to connect and smooth the seams of adjoining pieces . . . of sheetrock. Joint compound is spread in a thin coat and then smoothed." *Georgia-Pac. Corp. v. Bostic*, 320 S.W.3d 588, 591 (Tex. App.—Dallas 2010, pet. granted), *aff'd*, 439 S.W.3d 332 (Tex. 2014).

Decl., 3. At that time, the HVAC system in Plaintiffs' home was operating. Doc. 23, Def.'s App'x, 226. Lewis took samples of the suspected mold, which were subsequently mailed to a lab that confirmed the presence of mold in the home. *Id.* at 220, 223–24; Doc. 25, Lewis Decl., 3. Lewis also measured the humidity in the home, which indicated an indoor humidity of approximately 27%. Doc. 25, Lewis Decl., 3.

Ultimately, Lewis recommended that the moldy sheetrock be entirely removed and destroyed. Doc. 23, Def.'s App'x, 238, 264. Plaintiffs adhered to Lewis's recommendation and removed the sheetrock from their home. *Id.* at 85–86. They have since purchased and installed new sheetrock, which has not exhibited any signs of mold growth. *Id.*

Plaintiffs initiated the present litigation on November 3, 2022, in Texas state court. Doc. 1-1, Original Pet. Home Depot removed the case to this Court on December 15, 2022. Doc. 1, Notice of Removal. While Plaintiffs initially asserted a laundry list of claims against Home Depot, they have since stipulated to the dismissal of most of those causes of action. *See* Doc. 24, Resp., ¶ 8. At this stage, the only claims remaining are for (1) negligence, (2) gross negligence, (3) breach of contract, and (4) violations of the Texas Deceptive Trade Practices Act ("DTPA"). *See* Doc. 1-1, Original Pet, ¶¶ 9–28; Doc. 24, Resp., ¶ 8. Plaintiffs allege that Home Depot exposed the sheetrock to moisture prior to delivering the sheetrock to Plaintiffs on April 3, 2021, and thus is solely responsible for the mold growth that appeared on May 25, 2021. *See* Doc. 24, Resp., ¶¶ 47, 53.4(b), 55.3.

On October 13, 2023, Home Depot filed the present Motion for Summary Judgment. Doc. 21., Summ. J. Mot., 1–2. Home Depot argues that it is entitled to summary judgment on each remaining claim because Plaintiffs have no evidence that the mold growth in their home is attributable to Home Depot. *See id.* The Motion has been fully briefed and is ripe for review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (citations omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted). But the Court need not "sift through the record in search of

evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998) (citations omitted). If the non-movant is unable to make the required showing, the Court must grant summary judgment. *Little,* 37 F.3d at 1076.

## III.

## ANALYSIS

The Court concludes that Home Depot is entitled to summary judgment because it has established that there is no genuine issue of material fact for trial.

The only claims remaining at this stage of this litigation are for (1) negligence, (2) gross negligence, (3) breach of contract, and (4) violations of the DTPA. *See* Doc. 1-1, Original Pet., ¶¶ 9–28; Doc. 24, Resp., ¶ 8. It is undisputed that each remaining claim requires proof that Home Depot exposed the sheetrock to moisture—and thus caused the mold to grow—prior to delivering the sheetrock to Plaintiffs. *See* Doc. 24, Resp., ¶¶ 29–36. Plaintiffs contend that, solely by virtue of delivering moist sheetrock, Home Depot breached a duty of care to Plaintiffs, breached a contract with Plaintiffs, and violated the DTPA as to Plaintiffs. *See id.* ¶¶ 47, 53.4(b), ¶ 55.3. Because each claim rests on the same factual predicate—that Home Depot delivered moist sheetrock and thus caused the mold growth—Plaintiffs necessarily must establish that fact in order to prevail on any of their claims at trial.

Home Depot argues that it is entitled to summary judgment because Plaintiffs lack competent evidence to support a finding that Home Depot is responsible for the mold. *See* Doc. 22, Mot. Summ. J. Br., 7–11. When, as here, the nonmovant bears the burden of proof on a claim at trial, "the moving party may make a proper summary judgment motion [on that claim] . . . with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Texas, L.P.,* 864 F.3d 326, 335 (5th Cir. 2017). If the movant properly

alleges that the nonmovant lacks evidence on an element of his claim, the burden shifts to the nonmovant to "present[]evidence that provides a genuine issue for trial." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999). While conclusory allegations "that the nonmovant has no evidence to support his case" are insufficient to shift the burden, allegations "that there is no evidence to support a *specific element* of the nonmovant's claim" suffice. *See Austin*, 864 F.3d at 335 n.10 (emphasis in original).

Because Home Depot has moved for summary judgment on the ground that Plaintiffs lack evidence on an essential element of each of their remaining claims, the burden is on Plaintiffs to come forward with evidence sufficient to demonstrate the existence of a genuine issue of fact. *See id.*; Doc. 22, Mot. Summ. J. Br., 7–11. The only evidence Plaintiffs offer in response to Home Depot's Motion is the declaration of their expert, Brett Lewis—the individual who conducted the mold assessment. *See* Doc. 24, Resp., ¶¶ 29–36. In that declaration, Lewis opines that the mold growth on Plaintiffs' property "was a result of the sheetrock being exposed to moisture prior to the installation." Doc. 25, Lewis Decl., 4. Two factors led Lewis to this conclusion. First, Lewis ruled out indoor humidity and the joint compound as potential causes of the mold. *Id.* As for humidity, Lewis noted that the Environmental Protection Agency ("EPA")'s published guidance states "that a key to preventing mold growth is to maintain a relative humidity of between 30 - 50%." *Id.* at 3. On June 3, 2021, Lewis measured "an inside humidity reading of 27% (very low)" in Plaintiffs' premises. *Id.* Based on the EPA's guidance and Lewis's humidity recording, he "ruled out humidity inside the Property as being the cause of the heavy mold growth that [he] observed." *Id.* Lewis further reasoned that the joint compound could not have caused the mold because this substance would have dried too quickly to have permitted the mold growth at issue here. *Id.* at 3–4. The second factor Lewis relied on was "the consistency of

the mold growth on the sheetrock throughout the house." *Id.* at 4. Such consistency led him to conclude "that all of the sheetrock was exposed to moisture and was uniformly wet." *Id.* Based on these two factors—i.e., that the mold was not caused by either humidity or the joint compound and that the sheetrock was uniformly wet—Lewis concluded that the mold growth on Plaintiffs' property "was caused by the sheetrock being exposed to moisture prior to installation." *Id.*

Home Depot argues that Lewis's declaration is inadmissible,[2] and therefore Plaintiffs lack competent evidence to support a finding that Home Depot is responsible for the mold. *See* Doc. 28, Reply, 1–5. The Court agrees.

"'In considering a Rule 56(c) motion opposed by expert testimony, the trial court has broad discretion to rule on the admissibility of the expert's evidence and may inquire into the reliability and foundation of any expert's opinion.'" *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (alterations omitted) (quoting *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123 (5th Cir. 1988)). The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 provides that an otherwise qualified expert may testify if the proponent demonstrates the following:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. As the Supreme Court explained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, Rule 702 requires that courts act as gatekeepers to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." 509 U.S. 579, 590 (1993).

---

[2] Home Depot has filed a separate Motion to Strike Lewis's Declaration. See Doc. 29, Mot. Strike. Because Home Depot properly objected to this evidence in its reply, *see* Doc. 28, Reply, 1–3, the Court does not separately consider the Motion to Strike. *See* FED. R. CIV. P. 56(c)(2).

"The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Equal Emp. Opportunity Comm'n v. S&B Indus., Inc.*, No. 3:15-CV-0641-D, 2017 WL 345641, at *2 (N.D. Tex. Jan. 24, 2017) (Fitzwater, J.). "The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021) (Fitzwater, J.).

The Court assumes that Lewis is a qualified expert and his declaration is otherwise relevant. Thus, the dispositive issue here is whether Lewis's opinion is reliable. *See S&B Indus., Inc.*, 2017 WL 345641, at *2.

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Id.* at 355 (citations omitted). "If the basis for an expert's opinion is clearly unreliable, the district court may disregard that opinion in deciding whether a party has created a genuine issue of material fact." *Munoz*, 200 F.3d at 301.

The Court concludes that Lewis's opinion—that the mold was a result of the sheetrock being exposed to moisture prior to installation—is unreliable for three reasons. First, Lewis reached his conclusion without considering the key fact of when the sheetrock was installed. *Cf. Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423 (5th Cir. 1987) (explaining that an expert's "failure to take into account" key facts in forming a conclusion weakened the reliability of the opinion); *McNabney v. Lab. Corp. of Am.*, 153 F. App'x 293, 295–96 (5th Cir. 2005) (same). Second, in

reaching his conclusion, Lewis makes the unwarranted assumption that humidity levels in the home were constant between April 3 and June 3. *See Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 806–07 (N.D. Tex. 2018) (Horan, M.J.) ("[While] experts are permitted to rely on assumptions when reaching their opinions[,] . . . . those assumptions must have some factual basis in the record and an underlying rationale."). Third, and finally, the logical gap between his propositions and his conclusion is too wide. *See Knight*, 482 F.3d at 355 (affirming exclusion of expert testimony as unreliable "where the analytical gap between the studies on which he relied and his conclusions was simply too great.").

Lewis's failure to consider the temporal proximity between the installation of the sheetrock and the discovery of the mold casts serious doubt on the reliability of his opinion. Lewis states in his declaration that "[o]nce a mold spore is exposed to moisture and a food source . . . . it can take three to five days for mold to start growing and become visible." Doc. 25, Lewis Decl., 3–4. Depending on the environment, "it can take longer," *id.*, but fourteen days is generally the longest it takes for mold growth to become visible after a food source[3] is exposed to moisture. Doc. 23, Def.'s App'x, 244–45. Here, the undisputed evidence demonstrates that the sheetrock was finally installed in Plaintiffs' residence on April 12, 2021, forty-three days before Plaintiffs first discovered the mold on May 25, 2021. Doc. 23, Def.'s App'x, 180. According to Lewis's own opinion, if the sheetrock was exposed to moisture prior to installation, the mold would have been apparent—at the latest—by April 26, 2021, which was fourteen days after installation was

---

[3] It appears from Lewis's deposition testimony that a "food source" is simply the object on which the mold appears: "[L]ike I said before . . . add moisture and a food source and mold will grow. Mold will eat [almost] anything except for metal[,] . . . ceramic[,] . . . and glass. Anything else, it will pretty much eat. . . . Like paint primers and glue is a food source for mold." Doc. 23, Def.'s App'x, 230. Here, the food sources for the mold that appeared in Plaintiffs' home are the surfaces which had mold, including the sheetrock. *See id.*

complete. Doc. 23, Def.'s App'x, 48, 244–45. No mold was visible on this date or for a month thereafter. *Id*. at 48, 128–129, 244–45. Notwithstanding the implications of this evidence, Lewis did not consider the date of installation in reaching his conclusion. Doc. 25, Lewis Decl., 3–4; *Cf. YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 WL 429208, at *3 (W.D. Tex. Jan. 28, 2017). In fact, during his deposition, Lewis testified that he did not know when the sheetrock was delivered to Plaintiffs or when it was installed. Doc. 23, Def.'s App'x, 215–18, 229–30. Under these circumstances, Lewis's failure to take into account the temporal proximity between the installation of the sheetrock and the discovery of the mold renders his conclusion unreliable. *See Viterbo*, 826 F.2d at 423.

Lewis's opinion—that the sheetrock was exposed to moisture prior to installation—is also unreliable because he assumes "without sufficient facts or data" that the humidity levels between the date of installation and June 3 were constant. *See Jacked Up*, 291 F. Supp. 3d at 806–07. Lewis concluded that the sheetrock was exposed to moisture prior to installation in part because he ruled out indoor humidity as a potential cause of the mold. Doc. 25, Lewis Decl., 3–4. And Lewis was only able to rule out indoor humidity as the cause based off measurements he took on June 3, 2021. *Id*. at 4. However, these measurements only support Lewis's conclusion if one were to assume that the humidity levels in the home in April and May were the same as the humidity levels in the home on June 3. Plaintiffs have failed to offer any evidence which would support such an assumption, and in fact, the evidence suggests that the opposite is true. *Moore*, 547 F. App'x at 515 ("[E]xpert testimony that relies on completely unsubstantiated factual assertions is inadmissible." (citations omitted)). When the mold was discovered in late May, Plaintiffs' home HVAC system was not in operation; however, the HVAC system was operating when Lewis took the humidity readings on June 3. *Id*. at 32–33, 226. And, according to Lewis, "the HVAC system

is going to dry things out quicker than if it's not on." *Id.* at 242. Thus, that the HVAC system was not in operation prior to June 3 would suggest the humidity was in fact higher when the sheetrock was installed than it was when Lewis took his measurements. As such, the Court also finds Lewis's declaration unreliable because an essential part of his opinion rests an assumption unsupported by the evidence. *See Moore*, 547 F. App'x at 516.

Finally, the Court finds Lewis's opinion unreliable because there is simply too great a gap between his propositions and his conclusion. *See Knight*, 482 F.3d at 354. Lewis concluded that the mold in Plaintiffs' residence was a result of the sheetrock being exposed to moisture prior to installation for two reasons: (1) the mold was not caused by humidity or the joint compound and (2) the sheetrock was uniformly wet. Doc. 25, Lewis Decl., 4. However, it is unclear how Lewis's conclusion follows from his two premises. With respect to the first, that the mold was not caused by certain factors (i.e., humidity or joint compound) merely reduces the universe of potential causes. While this observation may go to *how* the sheetrock was exposed to moisture, it does support an inference as to *when* the sheetrock was exposed to moisture. With respect to the second, the observation that the sheetrock was uniformly wet and exposed to moisture merely restates the obvious—that there was mold on the sheetrock.[4] In essence, Lewis made a conclusion as to *when* the sheetrock was exposed to moisture by ruling out two potential sources of moisture and by observing the obvious existence of moisture. *See* Doc. 25, Lewis Decl., 4. This conclusion does not clearly follow from Lewis's premises, and he fails to bridge this logical gap in his declaration. *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-CV-2255-L, 2019 WL 1436659, at *15 (N.D. Tex. Mar. 31, 2019) (Lindsay, J.) ([T]the link between the facts and data

---

[4] If the sheetrock was not uniformly wet and exposed to moisture, it would not have been uniformly moldy. See Doc. 23, Def.'s App'x, 224.

relied on by him and the conclusions made by him in support of his opinion is not sufficiently developed or explained in . . . his declaration.").

In sum, the Court finds that Lewis's opinion is unreliable. He fails to consider key facts, makes unwarranted factual assumptions, and reaches a conclusion on the basis of seemingly unrelated data points. Given that his declaration is unreliable, it is not admissible under Rule 702. *See* FED. R. EVID. 702; *Daubert*, 509 U.S. 579, 590. Because only evidence capable of being presented in an admissible form is considered on a motion for summary judgment, the Court will not consider the declaration in evaluating the sufficiency of Plaintiffs' evidence. *See Evans v. Miley*, No. 9:21-CV-00052, 2023 WL 8295995, at *3 (E.D. Tex. Sept. 22, 2023); *Arlington Apartment Invs., LLC v. Allied World Assurance Co. (U.S.) Inc.*, No. 4:12-CV-061-Y, 2014 WL 11514891, at *2 (N.D. Tex. June 3, 2014) (Means, J.).

As explained, each of Plaintiffs' remaining claims rests on the theory that Home Depot caused the mold. Under Texas law, expert evidence is generally needed to establish the cause of mold. *See Qualls v. State Farm Lloyds*, 226 F.R.D. 551, 558 (N.D. Tex. 2005) (Godbey, J.); *Cagle v. Allstate Texas Lloyds*, No. CIV.A. H-04-2953, 2005 WL 2076145, at *2 (S.D. Tex. Aug. 25, 2005). Plaintiffs have failed to come forward with admissible expert evidence demonstrating that Home Depot caused the mold, and therefore, they "have failed to raise a genuine issue of material fact and [Home Depot] is entitled to summary judgment." *See Cagle*, 2005 WL 2076145, at *2; *see also Qualls*, 226 F.R.D. 551, 558. And even if lay evidence would be sufficient to prove that Home Depot was the cause of the mold in this case, Plaintiffs have come forward with no other evidence which would support such a finding. At most, the evidence before the Court tends to show that mold appeared on the sheetrock 52-days after it was delivered. This falls far

short of what is needed to prevail at trial. *See Thomas*, 174 F.3d at 644. Accordingly, Home Depot is entitled to summary judgment on each of Plaintiffs' remaining causes of action.

## IV.

## CONCLUSION

For these reasons, the Court **GRANTS** Home Depot's Motion for Summary Judgment. Plaintiffs' remaining claims for are **DISMISSED** with prejudice. A final judgment will follow.

**SO ORDERED.**

**SIGNED: March 20, 2024.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-13-